IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT MAXWELL, ) | |
| ) | |
| Plaintiff, ) | No. 10 CV 00320 |
| ) | |
| v. ) | Magistrate Judge Schenkier |
| ) | |
| COUNTY OF COOK, a unit of local ) | |
| Government; THOMAS DART, in his ) | |
| individual and official capacity as Sheriff of ) | |
| Cook County, Illinois, BILL CUNNINGHAM, ) | |
| in his individual capacity, ) | |
| ) | |
| Defendants. ) | |

## AMENDED MEMORANDUM OPINION AND ORDER[1][2]

On September 7, 2010, plaintiff, Robert Maxwell, filed a five-count amended complaint[3] against the defendants (doc. # 41), alleging violations of the *Shakman* Consent Decree (Count I), Mr. Maxwell's civil rights under 42 U.S.C. §§ 1983 and 1988 (Count II), the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. § 621 *et seq.* (Count III), the Illinois Human Rights Act ("IHRA"), 775 ILCS § 5/1-101 *et. seq.* (Count IV) and, pursuant to Section 1983, Mr. Maxwell's right to equal protection under the Fourteenth Amendment to the United States Constitution (Count V). On September 28, 2010, defendants – County of Cook, Thomas Dart,

---

[1] Pursuant to the consent of the parties and 28 U.S.C. § 636(c), on September 1, 2010, the case was assigned to this Court for all proceedings, including the entry of final judgment (doc. # 39).

[2] This amended opinion, dated March 17, 2011, supercedes a Memorandum Opinion and Order dated February 1, 2011 (doc. # 75), and is entered *nunc pro tunc* to February 1, 2011.

[3] Prior to his amendment, Mr. Maxwell filed a two-count complaint against the defendants on January 15, 2010, (doc. # 1) alleging that the defendants had violated the *Shakman* Consent Decree (Count I) and Mr. Maxwell's civil rights under 42 U.S.C. § 1983 (Count II).

individually and in his official capacity as Sheriff of Cook County, and Bill Cunningham, in his individual capacity (collectively, "the Sheriff") – moved to dismiss with prejudice Counts I and II for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or, alternatively, to dismiss them for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) (doc. # 46).

For the reasons set forth, we deny the Sheriff's motion to dismiss Count I, and grant in part and deny in part the Sheriff's motion to dismiss Count II.

I.

We begin by providing a summary of the relevant background information.[4] Cook County is an Illinois municipal corporation that, among other things, administers itself through the Cook County Sheriff's Office (Am. Compl. ¶ 8). In the Sheriff's Office, Thomas Dart and Bill Cunningham occupy the positions of Sheriff and Director of Operations, respectively (*Id.* ¶¶ 9-10). Mr. Maxwell, who has worked in policing since 1969, was hired to the Sheriff's Office in 1991 by Michael Sheahan (who preceded Mr. Dart as Sheriff), and has subsequently received numerous commendations for his job performance (*Id.* ¶¶ 18-20, 55). The positions held by Mr. Maxwell in the Sheriff's Office have included: Assistant Chief of Court Services, Merit Board Investigator, Internal Affairs Investigator, and Division Administrator for the Juvenile Courts (*Id.* ¶ 22).

In 1993, Director of Intergovernmental Affairs, Edward Carik, and Chief of Courts, John Kinnane, told Mr. Maxwell that it would behoove him to attend fundraisers and knock on doors, which he did to his displeasure (Am. Compl. ¶ 23). Mr. Maxwell also received invitations to

---

[4] For purposes of the Sheriff's motion to dismiss, the Court assumes as true all well-pleaded allegations set forth in the complaint. *See, e.g., Killingsworth v. HS Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). However, the Court does not accord such deference to the complaint when analyzing the Sheriff's subject matter jurisdiction challenge. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009)

2

fundraisers for Mr. Sheahan which requested a $500.00 contribution (*Id.*). On March 29, 2004, Mr. Maxwell was promoted to his current rank of Police Officer (*Id.* ¶ 24-25). In October 2005, Mr. Maxwell attended the Democratic "slating party" and informed Messrs. Sheahan and Dart that he intended to run against Mr. Dart in the primary for Sheriff (*Id.* ¶ 26). At the slating party, Sheriff Dart told Mr. Maxwell: "You know this is a done deal" (*Id.* ¶ 28). Plaintiff nonetheless sought to be slated at the October 2005 meeting, without success (*Id.* ¶¶ 27, 33).

Later, Mr. Carik told Mr. Maxwell to go to Mr. Dart and offer to do whatever Mr. Maxwell could do for Mr. Dart during his campaign (Am. Compl. ¶ 29). Mr. Kinnane told another employee to take his name off of Mr. Maxwell's petition for Sheriff or "he would lose his job" (*Id.* ¶ 30). On December 17, 2005, Mr. Kinnane also called Mr. Maxwell's wife and told her to "talk some sense into her husband," and stated that running for Sheriff would cost Mr. Maxwell his political future and cost their daughter the job getting on as a Cook County Sheriff (*Id.* ¶ 31). After Mr. Maxwell announced his intentions to run for Sheriff on the Democratic ticket, Chief of Patrol, Matt Walsh, a political ally of Mr. Sheahan and Mr. Dart, told Mr. Maxwell that he was not going to get anything else (meaning promotions or assignments) in Sheriff's Police (*Id.* ¶ 32).

Mr. Dart was slated as the Democratic candidate for Sheriff in October 2005 and, since then, Mr. Maxwell has been denied promotion to Sergeant – a position that is controlled by Sheriff Dart and/or Bill Cunningham, as Director of Operations (Am. Compl. ¶¶ 33-35, 56). In 2006, Mr. Maxwell applied and interviewed for the position of evidence technician (*Id.* ¶ 36). Mr. Maxwell was turned down after interviewer Sergeant Carl Humbert told Mr. Maxwell "I am concerned about your age" and submitted his recommendations to the Chief of Police or his deputy (*Id.* ¶¶ 36-38). In 2007, Mr. Maxwell passed the Sergeant's exam and was added to the Sergeant's list, which is

3

maintained for two years (*Id.* ¶¶ 39-40). Since October 2008, 15 people from that list who are objectively less qualified than Mr. Maxwell have been promoted to Sergeant, while Mr. Maxwell has been denied promotions and special assignments (*Id.* ¶¶ 41, 44, 46). Each of these promoted persons has either contributed to Sheriff Dart's campaign or the Democratic party associated with Sheriff Dart or possesses some other form of political "clout" (*Id.* ¶ 42). In 2008, Mr. Maxwell reapplied for and was denied the position of evidence technician, after interviewing with Sergeant Humbert who asked Mr. Maxwell: "When are you going to retire?" (*Id.* ¶ 45-46).

Since October 30, 2008, Mr. Maxwell has been denied promotions to Sergeant and repeatedly turned down for specialty assignments in favor of others who are less qualified (Am. Compl. ¶ 46-51). Specifically, in January 2009, Mr. Maxwell was denied the specialty assignments of Evidence Technician, Detective, and Special Operations Investigator (*Id.* ¶ 49). On January 16, 2009, Mr. Maxwell was removed from the specialty assignment of Research and Development and replaced by Robert Thomas, who is less qualified for that position (*Id.* ¶ 52). On April 7, 2009, Jason O'Malley was promoted to Sergeant, though Mr. Maxwell is objectively more qualified (*Id.* ¶ 53).

Count I of Mr. Maxwell's complaint alleges that the Cook County Sheriff's Office violated the "*Shakman* Decree," which enjoins the Sheriff from (with certain exemptions) "conditioning, basing or knowingly prejudicing or affecting any term or aspect of governmental employment, with respect to one who is at the time already a government employee, upon or because of any political reason or factor." *Shakman v. Democratic Org. of Cook County*, 481 F. Supp. 1315, 1358 (N.D. Ill. 1979), *vacated sub nom.*, *Shakman v. Dunne*, 829 F.2d 1387, 1398 (7th Cir. 1987), *cert. denied*, 484 U.S. 1065 (1988) (*See* Am. Compl. at 11-12). Count II alleges that Cook County, Thomas Dart, in his individual and official capacity, and Bill Cunningham, individually, violated Mr. Maxwell's civil

rights under 42 U.S.C. § 1983 by subjecting him to unequal and retaliatory treatment for exercising his First Amendment rights to free speech and free association (Am. Compl. at 12-13).

## II.

We provide the governing legal standards, before addressing the Sheriff's Rule 12(b)(1) challenge to Mr. Maxwell's *Shakman* claim and the Sheriff's Rule 12(b)(6) challenge to Mr. Maxwell's Section 1983 claim against the individually named defendants, as well as Cook County.

### A.

Rule 12(b)(1) requires dismissal of any claim over which the federal court lacks subject matter jurisdiction. In reviewing a motion challenging subject matter jurisdiction, "the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (internal quotations omitted). Once such evidence is offered, "[t]he presumption of correctness that we accord to a complaint's allegations falls away," and the plaintiff bears the burden of coming forward with competent proof that jurisdiction exists. *Id.*

Rule 12(b)(6) requires dismissal if the allegations in the complaint, when taken as true and with all reasonable inferences drawn in favor of the plaintiff, do not state a claim for which legal relief can be granted. A court considering a Rule 12(b)(6) motion to dismiss is generally confined to the allegations contained in the complaint, and cannot consider extrinsic evidence without converting the motion to a Rule 56 motion for summary judgment; however, "the bar on considering matters outside the pleadings is not absolute." *Cont'l Cas. Co. v. American Nat. Ins. Co.*, 417 F.3d 727, 731 n. 3 (7th Cir. 2005). Documents that a defendant attaches to a motion to dismiss will be

considered part of the pleadings if they are: (1) referred to in the plaintiff's complaint and (2) central to the plaintiff's claims. *Id.* Further, in ruling on a 12(b)(6) motion, the district court may consider matters of public record outside of the complaint. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

While the material facts alleged in plaintiff's complaint must be taken as true and construed favorably to the plaintiff, this tenet is "inapplicable to legal conclusions" that are "supported by mere conclusory statements." *Ashcroft v. Iqbal*, ___ U.S. ___, ___, 129 S.Ct. 1937, 1949 (2009). In assessing whether the allegations are sufficient to state a claim, a reviewing court must determine whether the plaintiff's assertions contain "'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In *Iqbal*, the Supreme Court explained that the "plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The Seventh Circuit recently interpreted this requirement as follows:

> The fact that the allegations undergirding a claim could be true is no longer enough to save a complaint from being dismissed; the complaint must establish a nonnegligible probability that the claim is valid; but the probability need not be as great as such terms as 'preponderance of the evidence' connote.

*In re: Text Messaging Antitrust Litig.*, ___ F.3d ___, ___, 2010 WL 5367383, *6 (7th Cir. Dec. 29, 2010).

**B.**

The Sheriff first argues that parts of Mr. Maxwell's *Shakman* claim should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).[5] As part of the *Shakman* proceedings, this Court approved a Supplemental Relief Order ("SRO") on October 30, 2008. *See* Supplemental Relief Order for the Sheriff of Cook County in *Michael Shakman, et al v. Democratic Organization of Cook County, et al.*, Case No. 69 C 2145 (doc. # 957). In addition to describing the political patronage activities that are prohibited, the SRO provides procedures for addressing alleged *Shakman* violations occurring both before and after the entry of the SRO (*See id.*, Sections IV-V).

The SRO sets forth a claims procedure that present or past employees could utilize to seek a monetary award for alleged *Shakman* violations with respect to actions that predate October 30, 2008. The SRO makes clear that this claims procedure was the exclusive remedy for a person seeking relief under the *Shakman* decree for alleged violations occurring prior to October 30, 2008 (*Id.*, Section IV(B)). With respect to alleged *Shakman* violations after October 30, 2008, the SRO requires that an individual who seeks relief must file a written complaint under the SRO within 180 days after the individual knew or should have known of the alleged unlawful conduct (SRO, Section V(A)(1)). Once the Sheriff's Office of Professional Review ("OPR") completes its investigation of the complaint and the complainant receives the report of the investigation, the complainant either may proceed to arbitration under the SRO or may file suit in federal court (*Id.*, Section (V)(A)(10)). In either event, the complainant must act within 30 days (*Id.*).

---

[5] The Sheriff's jurisdictional challenge applies to Count I as well as Count II (to the extent that any of Mr. Maxwell's allegations in Count II are based on a violation of the *Shakman* Decree prior to October 30, 2008) (Defs.' Mot. at 3).

7

Relying on the SRO, the Sheriff contends that Mr. Maxwell's allegations pre-dating October 30, 2008, are time-barred as "pre-SRO" claims, and Mr. Maxwell's allegations pre-dating December 18, 2008 are time-barred. Mr. Maxwell alleges that he filed his SRO complaint on June 16, 2009 (Am. Compl. ¶ 11), making any actions occurring earlier than December 18, 2008, untimely in light of the 180-day period for filing complaints under the SRO. In response, Mr. Maxwell admits that his complaint contains some "relevant acts beyond the statute of limitations for purposes of background," but does not identify what acts those may be (*See* Pl.'s Resp. at 2). Before addressing the Sheriff's arguments, we address Mr. Maxwell's argument that Rule 12(b)(6) is the proper vehicle for resolving statute of limitations issues, as opposed to Rule 12(b)(1).

The Seventh Circuit has left open the question of whether a district court's determination that a plaintiff's claim is time-barred is more appropriately a matter of subject matter jurisdiction or the plaintiff's failure to state a claim. Some decisions indicate that the question may appropriately fall under Rule 12(b)(1), because the district court does not ordinarily have the authority to resolve time-barred claims. *See Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 193 (7th Cir. 1993) (affirming district court's dismissal of plaintiff's claims as time-barred under Rule 12(b)(1)); *Kontos v. U.S. Dept. of Labor*, 826 F.2d 573, 576 (7th Cir. 1987) (meeting time limits for filing employment discrimination claims against the federal government is a prerequisite to jurisdiction in federal court); *See also* Wright and Miller, 5B Fed. Prac. & Proc. Civ. § 1350 (3d ed.) (treating the statute of limitations as a subject matter jurisdiction question under Rule 12(b)(1) is an unconventional, but recognized approach). However, other cases support the proposition that consideration under Rule 12(b)(6) is appropriate, on the theory that if the matter is time-barred then the plaintiff has failed to state a cognizable claim. *See Chaudhry v. Nucor Steel-Indiana*, 546 F.3d 832, 837 (7th Cir. 2008)

(affirming district court's dismissal of plaintiff's claims as time-barred under Rule 12(b)(6)); *see also Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) (filing a timely charge with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling). Recently, some district courts have held that Rule 12(b)(6) is the more appropriate vehicle to challenge the plaintiff's claims based on the running of a statute of limitations. *See, e.g., Draper v. Martin*, 2006 WL 3422173, *2 (C.D. Ill. Nov. 27, 2006); *Adams v. Crystal City Marriot Hotel*, 2004 WL 744489, *2 (S.D.N.Y. April 6, 2004) (converting Rule 12(b)(1) motion to Rule 12(b)(6)). These courts reason that the statute of limitations is an affirmative defense under Federal Rule of Civil Procedure 8(c) and, as such, has no bearing on subject matter jurisdiction. *Id.*

Regardless of whether we treat the Sheriff's motion under Rule 12(b)(1) or Rule 12(b)(6), the Court may consider the SRO in determining whether to grant the Sheriff's motion because the SRO is public record. *See Henson*, 29 F.3d at 284. Since the parties submit no other extrinsic evidence, there is no practical difference between deciding the Sheriff's motion under Rule 12(b)(1) or Rule 12(b)(6), and so we do not express a view on which Rule presents the better basis for ruling. It is clear that Mr. Maxwell's *Shakman* allegations pre-dating the October 30, 2008 approval of the SRO are time-barred. The pre-SRO claims procedure is the "sole recourse" for individuals alleging *Shakman* violations occurring prior to October 30, 2008 (*See* SRO, Section IV(B)). To preserve his cause of action, Mr. Maxwell would have had to file an "Opt-Out Request" notifying the Shakman Compliance Administrator of his intention to opt-out of the pre-SRO claims process by February 27, 2009 (*See id.*). Since Mr. Maxwell failed to do so, any claims based on actions predating the SRO's approval are now time-barred.