# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROBERT MAXWELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 10 CV 00320 |
| v. | ) |
| | ) Magistrate Judge Sidney I. Schenkier |
| COUNTY OF COOK, a unit of local | ) |
| Government; THOMAS DART, | ) |
| in his individual and official capacity | ) |
| as Sheriff of Cook County, Illinois, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER[1]

On May 7, 2014, Plaintiff Robert Maxwell filed a six-count fourth amended complaint ("Compl.") against the defendants County of Cook and Thomas Dart, both individually and in his official capacity as Sheriff of Cook County (doc. # 196). Mr. Maxwell alleges violations of: the *Shakman* Consent Decree[2] (Count I), his civil rights under 42 U.S.C. §§ 1983 and 1988 (Count II), the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. § 621 *et. seq.* (Count III), and the Illinois Human Rights Act ("IHRA"), 775 ILCS § 5/1-101 *et. seq.* (Count IV); retaliation in violation of the ADEA, IHRA, and Section 1983 (Count V); and disability discrimination in violation of the Americans with Disabilities Act 42 U.S.C. § 12101 *et. seq.*, ("ADA") as amended (Count VI).

---

[1]Pursuant to order of the Executive Committee and on the consent of the parties and 28 U.S.C. § 636(c), on September 1, 2010, the case was assigned to this Court for all proceedings, including the entry of final judgment (docs. ## 38, 39).

[2] The *Shakman* Decree is a longstanding order that prohibits the City of Chicago from patronage hiring practices for most positions.

Presently before this Court is defendants' motion to dismiss with prejudice the ADA claim in Count VI (doc. # 199). Defendants argue that Mr. Maxwell has not stated sufficient facts to support a plausible claim of discrimination under the ADA. Specifically, they argue that plaintiff has not sufficiently alleged he is disabled under the terms of the ADA, or that the alleged discrimination against him was the result of any alleged disability. For the following reasons, we grant the motion to dismiss Count VI.

### I.

We have set forth the central allegations of Mr. Maxwell's claims in an earlier opinion granting in part and denying in part a motion to dismiss the first amended complaint. *Maxwell v. County of Cook*, No. 10 C 320, 2011 WL 4639530 (N.D. Ill. March 17, 2011). While we will not reproduce the extensive recitation of facts set forth in the earlier opinion, we summarize the allegations relevant to the current motion. Solely for purposes of the motion, we assume without deciding the truth of all well-pleaded factual allegations in the complaint and make all permissible inferences in plaintiff's favor. *Active Disposal, Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011).

Mr. Maxwell has held various positions at the Cook County Sheriff's Office since 1991 (Compl. ¶ 19). Since 2004, he has been employed as a Police Officer for the Cook County Sheriff's Police Department ("CCSP") (*Id.*, at ¶¶ 6, 21, 25). In 2005, Mr. Maxwell sought to be slated as the Democratic candidate for Sheriff, running unsuccessfully against Defendant Thomas Dart (*Id.*, at ¶¶ 26-29). After learning of Mr. Maxwell's intention to run for Sheriff, the Chief of Patrol for the Sheriff's Office in Sheriff's Police told Mr. Maxwell that he was not going to get "anything else" (meaning promotions or special assignments) in Sheriff's Police and

the Chief of Courts for the Sheriff's Office told Mr. Maxwell's wife to tell her husband to quit running for Sheriff because it would ruin his career (*Id.*, at ¶¶ 32, 33).

Five years later, on September 6, 2010, Mr. Maxwell tore the rotator cuff in his right shoulder while arresting a suspect (Compl. ¶ 39). As a result of this injury, Mr. Maxwell was off work and had to undergo numerous surgeries (*Id.*, at ¶ 40). On August 5, 2011, Mr. Maxwell's doctor authorized him to return to work subject to permanent restrictions on his physical activity including a complete prohibition on climbing, crawling or reaching and a limitation of less than 2.5 hours per day on balancing with both arms or kneeling (*Id.*, at ¶ 43). Mr. Maxwell was also limited to performing activities that required lifting, carrying, pushing, or pulling only when in a sedentary position (*Id.*, at ¶ 44). According to Mr. Maxwell's doctor, he was specifically forbidden from any activity that required restraining other individuals, physical altercations or street duty (*Id.*, at ¶ 46). Mr. Maxwell had no limitations placed on activities that required walking, sitting, standing or crouching (*Id.*, at ¶ 45).

As a result of his injury, Mr. Maxwell filed a workers' compensation claim with the Illinois Industrial Commission ("IIC") (Compl. ¶ 41). On August 3, 2012, the IIC found that Mr. Maxwell's injury was an accident that arose out of his employment, and that it resulted in a permanent partial disability (*Id.*, at ¶ 52).

In September 2011, Mr. Maxwell asked to return to work in a position that was consistent with his permanent physical restrictions (Compl. ¶ 47). Defendants refused to return him to work in any capacity (*Id.*, at ¶ 48). Mr. Maxwell alleges that he would have been able to return to work if defendants had provided him with a reasonable accommodation and/or light duty (*Id.*, at ¶ 133). Defendants refused to engage in any interactive dialogue with plaintiff with respect to potential accommodations that could be made (*Id.* ¶ 134).

Mr. Maxwell later made a second request to return to work and on January 15, 2013, the CCSP provided him with a statement that it has no permanent light duty positions (Compl. ¶ 54). Mr. Maxwell was not paid for eight months of salary as a result of defendants' refusal to return him to work (*Id.*, at ¶ 55). During the time that defendants refused to return Mr. Maxwell to work, the CCSP offered a test for Sergeant and did not inform Mr. Maxwell about it, despite notifying others who were on leave or disability about the test (*Id.*, at ¶ 51).[3] Plaintiff later underwent additional surgery which enabled him to return to work in a full duty capacity as a police officer, which he did on June 10, 2013 (*Id.*, at ¶¶ 56, 57).

## II.

On a motion to dismiss for failure to state a claim, we must determine whether the complaint "contain(s) sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). And "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Twombley*, 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotation omitted.) "A complaint must always . . . allege enough facts to state a claim to relief that is plausible on its face, and how many facts are enough will depend on the type of case." *Limestone Dev. Corp. v. Villa. of Lemont, Ill.*, 520 F.3d 797, 803 (7th Cir. 2008) (internal citations omitted).

---

[3] In the fourth amended complaint, plaintiff refers to defendants' offering "another sergeant's test", while he was on leave, but does not specify whether or when he had previously and unsuccessfully applied for promotion to Sergeant. While earlier versions of the complaint provided more specificity with respect to Mr. Maxwell's applications to be promoted to Sergeant, those facts are omitted in this iteration of his complaint.

4

To state a claim of disability discrimination under the ADA, the plaintiff must show that: (1) he is disabled within the meaning of the ADA, as amended, (2) he is qualified to perform the essential functions of his job with or without a reasonable accommodation, and (3) the defendant took an adverse employment action against him because of his disability. *See, e.g., Spurling v. C & M Fine Pack, Inc.* 739 F.3d 1055, 1060 (7th Cir. 2014).[4] An adverse employment action includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee," unless the employer "can demonstrate that the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A). Moreover, "[b]ecause disability . . . can often be a legitimate consideration in employment decisions, a complaint alleging discrimination under the ADA must plead with adequate specificity that the plaintiff is qualified to perform the essential functions of the job with or without reasonable accommodation." *EEOC v. SuperValu, Inc.*, 674 F. Supp. 2d 1007, 1014 (N.D. Ill. 2009).

Defendants argue that Count VI of Mr. Maxwell's Complaint fails with respect to all three factors for demonstrating that he is protected by the ADA. We address the sufficiency of plaintiff's complaint in pleading these factors below.

### A.

We first hold that Mr. Maxwell has alleged sufficient facts to find that, during the time period in question, he was disabled under the ADA. The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . ." 42

---

[4]Since Mr. Maxwell was injured after January 1, 2009, the 2008 amendments to the ADA, which expanded the Act's coverage, apply to his claim. *See* ADA Amendments Act of 2008 ("ADAAA"), Pub.L. No. 110-325, 122 Stat. 3553.

U.S.C. § 12102(1). Moreover, the regulations to the 2008 amendments to the ADA clarified that the definition of disability should be interpreted broadly. 20 C.F.R. § 1630.1(c)(4).

In the Complaint, Mr. Maxwell alleges that because of his injury, he was limited in or prohibited from climbing, crawling, reaching, balancing, kneeling, lifting, carrying, pushing and pulling. He was also prohibited from activities that required restraining other individuals, physical altercations or street duty. Given that Mr. Maxwell had worked in law enforcement for at least 19 years at the time of his injury, we infer these last restrictions to refer to an allegation that he was substantially limited in his ability to work in the class of jobs related to law enforcement and more specifically, to being a police officer. *See, e.g., Povey v. City of Jeffersonville, Ind.*, 697 F.3d 619 (7th Cir. 2012) ("[W]hen the major life activity of working is at issue, an individual must be regarded as significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 42 U.S.C. § 12102(1)).

Many of the activities for which Mr. Maxwell had limitations may be considered major life activities under the ADA. In fact, two of them, working and lifting, are specifically listed in the statute. 42 U.S.C. § 12102(2)(A). *See also Rosa v. City of Chicago*, 2014 WL 1715484 * 5, 12 C 9648 (N.D.Ill., May 1, 2014)(holding that, absent specific guidance from the Seventh Circuit, statutory direction to construe post-amendment ADA broadly meant that activity of climbing should be considered a major life activity). Mr. Maxwell's other physical limitations may reasonably be considered major life activities as well, particularly given that some of his physical limitations, such as those regarding pushing, pulling and lifting, could also be implicated in his more specific work-related prohibitions against restraining individuals, physical

altercations or street duty. Thus, for the purpose of this motion, we agree that Mr. Maxwell's limitations were on major life activities.

Mr. Maxwell has also sufficiently alleged that the limitations on his major life activities were "substantial." To determine whether a particular limitation meets this standard, we must consider the nature and severity of the limitation, the actual or expected duration of the impairment, and the actual or anticipated long-term impact of the impairment. 29 C.F.R. § 1630.2(i). Again, the ADAAA and its regulations require that we interpret this phrase broadly. 29 C.F.R. § 1630.2(j)(1)(i) (the term "substantially limits" is "not meant to be a demanding standard"). Given that Mr. Maxwell was completely prohibited from climbing, crawling, reaching, restraining individuals, physical altercations and street duty, in addition to being forbidden to lift, carry, push or pull except when in a sedentary position, we find that his limitations were substantial.[5]

In so ruling, we are mindful that plaintiff eventually underwent surgery that successfully eliminated his impairment and allowed him to return to work with no restrictions. While such a temporary impairment may not have been considered a disability prior to 2009, the regulations of the ADAAA provide that "[t]he effects of an impairment lasting or expected to last fewer than six months can be substantially limiting within the meaning of this section." 29 C.F.R. § 1630.2(j)(ix) (2011). In this case, nearly three years passed between the time Mr. Maxwell was injured and his eventual surgery and return to work. Further, when his doctor returned Mr. Maxwell to work in August 2011 with significant restrictions, there was no indication (much less likelihood) that further surgery would eliminate those restrictions as of December 2013. In these

---

[5]Plaintiff faults defendants' brief for its failure to cite post-ADAAA case law in support of its argument in favor of dismissing the ADA claim. That criticism is a fair one. That said, we note that plaintiff makes a parallel error with respect to the current standard for a motion to dismiss, citing only to cases that predate the Supreme Court's *Twombly/Iqbal* decisions; in these cases the Supreme Court added a plausibility requirement to the previous concept of notice pleading. *See, e.g., Adams v. City of Indianapolis,* 742 F.3d 720 (7th Cir. 2014).

circumstances, we find that Mr. Maxwell has sufficiently alleged that he suffered from a covered disability during the time in question.

**B.**

Despite adequately pleading that he was disabled, plaintiff has failed to sufficiently plead the second element of an ADA claim: that he was qualified to perform the essential functions of his job with or without accommodation. Nowhere in his complaint does Mr. Maxwell contend that while disabled, he was qualified to perform his duties as a police officer with or without an accommodation; nor does he identify any accommodation that would have allowed him to perform those duties.

The totality of Mr. Maxwell's allegations with respect to being qualified to perform the essential functions of his job is that he "would have been able to return to work if the Defendants had offered him a reasonable accommodation and/or light duty." However, he does not say that he could have continued to work as a police officer with or without an accommodation. Indeed, other factual allegations in the complaint contravene an inference that any accommodation existed that would have allowed Mr. Maxwell to continue to work as a police officer. For example, Mr. Maxwell specifically states that he was completely barred from restraining other individuals, physical altercations or street duty. Further, he was adjudged permanently partially disabled by the IIC. In Illinois, a permanent partial disability occurs when an injury leaves a worker "permanently partially incapacitated from pursuing his or her usual and customary employment, and is reasonably certain to permanently prevent the worker from earning as much as the worker would have earned absent the injury." *DiFoggio v. The Retirement Board of the County Employees Annuity and Benefit Fund of Cook County, et al.* 156 Ill.2d 377, 379 (1993).

That is, for the duration of his injury, Mr. Maxwell was at least partially unable to perform his "usual and customary employment" as a police officer.

Furthermore, plaintiff's allegation that he could have returned to work if he had been offered light duty does not sufficiently plead that he was a qualified person with a disability. While light duty assignments may be a reasonable accommodation in some circumstances, *see Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685 (7th Cir. 1998), plaintiff admits that defendants had no permanent light duty positions available. The ADA does not require an employer to convert any of its temporary light-duty jobs to permanent positions for disabled employees. *Id.* at 697. In any event, plaintiff does not allege that any light duty positions – either temporary or permanent – existed at all. Therefore, we cannot infer that his supposed ability to perform a theoretical light duty position demonstrates that he was "qualified."

Mr. Maxwell's sparse allegations concerning his qualification to work with some accommodation other than light duty are similarly inadequate. Mr. Maxwell does not allege that any reasonable accommodation existed to be found, if only defendants had engaged in the interactive process; he merely states in a conclusory fashion that he would have been able to return to work if defendants had provided him with a reasonable accommodation. That kind of rote assertion is not enough to state a claim.

In *SuperValu*, the complaint stated that the plaintiff "was a qualified individual with a disability within the meaning of . . . the ADA" 674 F.Supp.2d 1011. The court there found that such an allegation failed "to assert that the plaintiff was qualified to perform the essential functions of the job with or without reasonable accommodation, and it is also precisely the type of conclusory, formulaic assertion that was disapproved by *Twombly*." *Id.* Mr. Maxwell's bare allegation that he could return to work with a reasonable accommodation essentially restates the

9

definition for finding a plaintiff to be a qualified individual with a disability. *Twombly* makes it clear that such generality will no longer suffice.

Mr. Maxwell's conclusory statement that defendants refused to engage in any interactive dialogue with respect to potential accommodations does not save his claim because the mere "failure of the interactive process is not an independent basis for liability under the ADA." *Spurling v. C&M Fine Pack, Inc.*, 739 F.3d 1055, 1059 n. 1 (7th Cir. 2014) *quoting Ozlowshi v. Henderson*, 237 F.3d 837, 840 (7th Cir. 2001). "An employee must still show that she is a 'qualified individual with a disability' and that a reasonable accommodation would have allowed her to perform the essential functions of her job." *C&M Fine Pack, Inc.*, 739 F.3d 1059 n. 1 (internal quotation omitted). Because he fails to sufficiently allege that he was a qualified individual with a disability, Mr. Maxwell fails to adequately plead that defendants violated the ADA.[6]

## CONCLUSION

For the reasons stated above, we grant Defendants' Motion to Dismiss Count VI of Plaintiff's Complaint (doc. # 199). Count VI is dismissed with prejudice.

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**DATE: August 4, 2014**

---

[6] Because we dismiss Count VI on this ground, we need not address the defendants' other grounds for dismissal.